```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>KEVIN S. SOLORZANO,<br><br>        Defendant. | HON. JEROME B. SIMANDLE<br><br>CRIM. NO. 06-922 (JBS)<br><br>ON APPEAL FROM JUDGMENT OF CONVICTION OF MAGISTRATE JUDGE<br><br>[Mag. No. 05-4063 (AMD)]<br><br>**OPINION** |

APPEARANCES:

Ralph Marra
Acting United States Attorney
By:  Richard E. Constable,
     Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102

Christopher M. Choate, Esq.
MCNABB ASSOCIATES, P.C.
JP Morgan Chase Tower
600 Travis Street
Suite 7070
Houston, TX 77002
     Attorney for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is before the Court upon appeal from Magistrate Judge Rosen's judgment of conviction of Defendant Kevin S. Solorzano.  The Government charged Defendant with two counts of violating 18 U.S.C. § 2243(b), which makes it unlawful for a

person to engage in a sexual act in a federal prison with a person who is in official detention and "[u]nder the custodial, supervisory, or disciplinary authority of the person so engaging." § 2243(b)(2). Defendant waived his right to a jury trial and consented to proceed before Magistrate Judge Rosen, who, following a bench trial, found beyond a reasonable doubt that Defendant was guilty of the charged offenses. On appeal, Defendant argues that Magistrate Judge Rosen erred in finding that the inmates with whom Defendant engaged in sexual activity were under his "custodial, supervisory, or disciplinary authority." Id. For the reasons set forth below, the Court will affirm the judgment of conviction.

**II.   BACKGROUND**

   **A.   Facts**

During the time when the events at issue in this matter took place, Defendant worked as a part-time x-ray technician in the Medical Unit of the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"). (Magistrate Judge Letter Opinion ("Mag. J. Op.") at 3.) On multiple occasions, Defendant engaged in sexual acts with two inmates – Omar Ocasio and Santiago Pena-Ruiz – while these inmates were in the Medical Unit of the prison in order to have x-rays taken. (Id. at 3-4.) As Magistrate Judge Rosen's Opinion makes clear, Defendant conceded at trial that he engaged in sexual acts with these inmates, that the acts

2

took place in the prison, that the acts were "sexual act[s]" as that term is defined in 18 U.S.C. § 2246(2), and that the inmates were in official detention.  (Id. at 3.)  The sole issue before Magistrate Judge Rosen, as on appeal, was whether the inmates with whom Defendant engaged in sexual activity were "[u]nder the custodial, supervisory, or disciplinary authority of [Defendant]," § 2243(b)(2), when Defendant engaged in the allegedly unlawful conduct.  The Court thus reviews only those facts that are relevant to this element of the charged offenses.

According to the testimony of Agent Jerry Byrnes of FCI Fairton, Defendant, as a contract employee at the prison, would receive a key, a radio, and an identification badge at a checkpoint upon his arrival to work.  (Mag. J. Op. at 3.)  After he received these items, Plaintiff would proceed, unescorted, to the Medical Unit, to which he had been given the key for the outer door.  (Id.)  As Agent Byrnes testified, no security officers or prison personnel were present with Defendant when he was at work with inmates in the Medical Unit.  (Id.)  According to Agent Byrnes,

> [w]hen the inmates come to the hospital area, they're in a waiting area, like a regular waiting room. And there's a wooden door there that the x-ray technician would have a key for.  [Defendant] could go out to that waiting area, unlock the door, call for whatever inmate, bring him into the hospital, lock the wooden door and then take them back to the x-ray room.

(Tr. at 49.)

3

Defendant's testimony was consistent with that of Agent Byrnes on this point; Defendant testified that although he could not order that inmates be summoned to the Medical Unit, once inmates were brought to the Unit, "they were, in fact, alone with him."  (Mag. J. Op. at 4-5.)  According to Defendant's testimony, he would personally escort inmates from the Medical Unit waiting room to the x-ray room, where the inmate would be alone with Defendant.  (Id. at 5.)

The testimony at trial indicated that Defendant engaged in sexual activity with Mr. Ocasio on two occasions, and with Mr. Pena-Ruiz on one occasion.  (Id. at 4.)  According to Mr. Ocasio, on three occasions, he visited the Medical Unit's x-ray room and was alone with Defendant.  (Id.)  On December 18, 2003 and December 23, 2003, Defendant closed the door to the x-ray room, where the two engaged in sexual activity.  (Id.)  Mr. Ocasio testified that Defendant stated to him that if Mr. Ocasio told anyone about what had happened, Mr. Ocasio could be sent to the prison's Special Housing Unit ("SHU") and Defendant could lose his job; Mr. Ocasio testified that he understood this statement to be a threat.  (Id.)  According to the testimony of Mr. Pena-Ruiz, Defendant engaged in similar conduct on August 23, 2004.  (Id.)  On that date, Mr. Pena-Ruiz testified, Defendant took him into the x-ray room, closed the door, and engaged in sexual activity with him; as with Mr. Ocasio, Defendant informed Mr.

Pena-Ruiz that if he told anyone about their encounter, he could be placed in the SHU. (Id.) At trial, Defendant testified that he informed both of these inmates that they could be placed in the SHU if they informed anyone of their sexual encounters with him, although he declined to characterize these statements as threats. (Id. at 5.)

### B. Procedural History

After he was charged with the two-count Complaint in this matter, Defendant waived his right to a jury trial and consented to proceed before Magistrate Judge Rosen. (Id. at 2.) Following a bench trial at which Agent Byrnes, Messrs. Ocasio and Pena-Ruiz, and Defendant testified, Judge Rosen issued a Letter Opinion in which he found "beyond a reasonable doubt that the defendant is guilty of each Count of the Complaint." (Id. at 6.) In concluding that Defendant had custodial and supervisory authority over inmates Ocasio and Pena-Ruiz when the inmates were locked in the Medical Unit, Judge Rosen noted that Defendant

> had the key and controlled access to the medical unit, x-ray room and back room where the sexual conduct occurred. There were no other prison officials in the facility who acted to provide security or otherwise supervise the inmates while in the Medical Facility . . . . [W]hen prisoners came to that Medical Facility, the defendant was clearly in charge and had supervisory control over the patients in []his care and custody.

(Id. at 5-6.) Judge Rosen recognized that Defendant had limited disciplinary authority over the inmates, but did not "find this to be controlling," noting that "while he might not have

5

disciplinary authority over the inmates, similar to that of a corrections officer," Defendant had custodial and supervisory authority over the inmates brought to the Medical Unit. (Id. at 5-6.)

Defendant filed a timely appeal of the judgment of conviction to this Court pursuant to Rule 58(g)(2)(B), Fed. R. Crim. P. Defendant moved to stay the execution of his sentence pending appeal, which, after hearing oral argument, the Court denied, observing that Defendant "fail[ed] to demonstrate (1) that he is not a danger to others or the community, and (2) that his appeal to this Court raises a substantial question of law or fact."[1]  (Docket Item 13 at 1.)  Following the Court's denial of

---

[1]  In concluding that Defendant had failed to present a significant issue for appeal, see United States v. Smith, 793 F.2d 85, 88-89 (3d Cir. 1986), the Court observed:

> All of the hallmarks of custodial and supervisory authority are present and were found by Judge Rosen beyond a reasonable doubt. His written findings identified the fact that Solorzano was alone with both inmates in the medical unit in the x-ray room. That he would conduct his x-ray examinations by going to the waiting room, bringing in the prisoner one at a time, escorting him into the x-ray room. He would be alone in the room and that that is the room where the sex occurred with the inmate. The defendant would close the door. He also was entrusted with the keys to the door. At no time were there other prison personnel in or about the medical facility. And Judge Rosen found, based upon those facts and the authority with which the defendant . . . was entrusted, that the government had proved beyond a reasonable doubt that the defendant had had custodial and supervisory authority over these victim inmates.

(Tr. at 19.)

Defendant's motion to stay the execution of his sentence, the parties filed submissions addressing the merits of Defendant's appeal, to which the Court now turns.

### III. DISCUSSION

#### A. Jurisdiction and Standard of Review

"The federal district courts are granted jurisdiction over appeals from a judgment of a magistrate judge in a criminal case." United States v. Pethick, 513 F.3d 1200, 1201 (10th Cir. 2008); see also 18 U.S.C. § 3402 ("In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed"); Fed. R. Crim. P. 58(g)(2). "Post-conviction review of a magistrate judge's judgment is governed by same standards as appeal from judgment of a federal district court to the court of appeals." United States v. Ellison, 112 F. Supp. 2d 1234, 1236 (D. Colo. 2000) (citation omitted). That is, this Court applies "de novo review to the legal determinations made by the [Magistrate Judge] and review[s] [his] factual findings for clear error." Armann v. McKean, --- F.3d ----, 2008 WL 5046820, at *16 n.7 (3d Cir. 2008) (citation omitted).

#### B. Custodial and Supervisory Authority Under Section 2243(b)

The statute Defendant was convicted of having violated provides:

7

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who is--
>
> (1) in official detention; and
>
> (2) under the custodial, supervisory, or disciplinary authority of the person so engaging;
>
> or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2243(b). In order to prove that a defendant is guilty of violating this statute, the Government must show: (1) that the defendant "knowingly engage[d] in a sexual act"; (2) that the sexual act occurred "in a . . . Federal prison"; (3) that the person with whom the defendant engaged in the sexual act with was "in official detention"; and (4) that the defendant engaged in the sexual act while victim was "[u]nder the custodial, supervisory, or disciplinary authority over the person so engaging." Id.; see also United States v. Ford, No. 07-602, 2008 WL 2439867, at *2 (D. Utah June 13, 2008). As the Court noted, supra, Defendant conceded at trial that he knowingly engaged in sexual acts with Messrs. Ocasio and Pena-Ruiz while these men were officially detained in a federal prison. The sole issue raised on appeal is whether the Magistrate Judge correctly found beyond a reasonable doubt that Ocasio and Pena-Ruiz were under Defendant's custodial or supervisory authority when the

sexual acts for which he was convicted took place.[2]  As the Court now explains, it is not persuaded by Defendant's argument that he had no custodial or supervisory authority over Ocasio and Pena-Ruiz when he engaged in the conduct at issue in this matter, and will accordingly affirm Judge Rosen's judgment of conviction.

"The starting point of any statutory analysis is the language of the statute."  Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir. 2005) (citation omitted).  In reviewing the language of the statute, the Court must assume "that the legislative purpose is expressed by the ordinary meaning of the words used."  Air Courier Conference of America/International Committee v. United States Postal Service, 959 F.2d 1213, 1218 (3d Cir. 1992) (quoting American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982)).  If the ordinary meaning of the statutory language is plain and unambiguous, "that is the end of the matter."  Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993) (citation omitted).

The Court's analysis thus begins, and potentially ends, with

---

[2] Defendant devotes considerable attention to arguing that he did not have "disciplinary" authority over inmates Ocasio and Pena-Ruiz.  As the Court explained, supra, Judge Rosen did not find beyond a reasonable doubt that Defendant had disciplinary authority over Ocasio and Pena-Ruiz, but instead found that Defendant had custodial and supervisory authority, which was sufficient to find Defendant guilty under the disjunctive terms of the statute.  The Court confines its analysis to the issue of Defendant's custodial and supervisory authority, as there was no finding by the Magistrate Judge that Defendant exercised disciplinary authority over the inmates.

the meaning of the phrase "under the custodial[] [or] supervisory . . . authority of the person so engaging," § 2243(b), and its critical terms, "custodial," "supervisory," and "authority." Good Samaritan Hosp., 508 U.S. at 409.  "Custody" – the noun associated with the adjective "custodial" – is defined as "judicial or penal safekeeping[,] . . . . imprisonment or durance of persons or charge of things," Webster's Third New Int'l Dictionary (Unabridged) 559 (1993); "durance," Webster's makes clear, is synonymous with "confinement" and "restraint." Id. at 703.  "Supervision" – the noun associated with "supervisory" – means "oversight, superintendence." Id. at 2296.  And "authority," according to Webster's, means "delegated power over others." Id. at 146.  As the ordinary usage of these words thus indicates, if Defendant was delegated power over the oversight or the confinement and/or restraint of inmates Ocasio and Pena-Ruiz at the time he engaged in sexual activity with these inmates, then his conduct fell squarely within the plain language of section 2243(b).

   Magistrate Judge Rosen found beyond a reasonable doubt that Defendant was entrusted with such power over the confinement and supervision of Ocasio and Pena-Ruiz at the time the sexual acts for which he was charged occurred, and the Court cannot agree with Defendant that this finding was in error.  Judge Rosen found that Defendant was given a key to the locked door that separated

the waiting room from the rest of the Medical Unit, that he would personally escort the inmates from the waiting room into the Medical Unit and the x-ray room, and that the inmates were under his exclusive care and supervision once they were escorted from the waiting room.  (Mag. J. Op. at 3-6.)  That Defendant's authority over these inmates was custodial in nature (and thus related to confinement or restraint) is evidenced not only by the fact that Defendant locked the door behind the inmates after they entered the Medical Unit (and was thereby responsible for an additional layer of confinement), (Tr. at 49), but also by the fact that between the time Defendant escorted these inmates from the waiting room into the Medical Unit, until his work with the inmates in the x-ray room was complete, Defendant was alone with the inmates; Judge Rosen found that no security officers or other prison personnel were present during these times,[3] and Defendant has not challenged this finding.  (Mag. J. Op. at 3-5.)  Defendant's suggestion, in the face of these undisputed facts, that he was in no way responsible for the custody or oversight of inmates whom he personally and independently escorted through the

---

[3] That Defendant Solorzano's authority over his patients was exercised exclusively, i.e., with no other guards present, certainly strengthens the proof of his custodial or supervisory authority over them, but this does not suggest that exclusive authority is required by the statute.  Certainly a prison guard who is part of a multi-guard unit could likewise violate § 2243(b) whether or not that guard's authority is exclusive or joint.

11

locked door, into the Medical Unit, and into the x-ray room, where, unaccompanied, he took x-rays with no other prison staff present, is untenable.[4]  Judge Rosen's finding that Defendant exercised "custodial[] [or] supervisory . . . authority" over inmates Ocasio and Pena-Ruiz when he escorted them into the Medical Unit, locked the door behind them, and was the sole agent of the prison present with them in the Medical Unit was not in error.  § 2243(b).

Defendant's arguments to the contrary are not persuasive.  First, although he concedes that the legislative history of section 2243(b) is "sparse," (Def.'s Br. at 3), Defendant relies upon a single nonspecific statement from North Carolina Congressman John Coble that "[t]he reforms contained in this bill have already been instituted in several of the States," 132 Cong. Rec. H2598 (May 12, 1986), to conclude that Congress must have had in mind certain specific state court opinions requiring "authority of a greater type than that possessed by Mr. Solorzano" under equivalent state laws, (Def.'s Br. at 9), when it enacted section 2243(b).

The Court is unconvinced.  In view of the comparative clarity of the statutory language, Defendant's invocation of this

---

[4] In light of the above-mentioned facts, Defendant's argument that his authority over the inmates was no different from that of "another inmate, a visitor, or an attorney," (Def.'s Br. at 16), is unsustainable.

12

"vague and isolated piece of legislative history" is hardly illuminating.  American Bankers Ins. Co. of Florida v. Maness, 101 F.3d 358, 364 (4th Cir. 1996) (citation omitted).  Whichever reforms and state laws Congressman Coble had in mind when making the statement Defendant cites, he manifestly was not referring to the state court opinions that Defendant references in support of his argument, some of which were issued after section 2243(b) was enacted, see, e.g., Randolph v. State, 269 Ga. 147 (1998); State v. Walker, 140 N.E. 2d 79 (Ohio Ct. App. 2000), and some of which do not support Defendant's position that the statutory language requires "authority of a greater type than that possessed by Mr. Solorzano."[5]  (Def.'s Br. at 9.)  In short, the single sentence

---

[5]  In particular, Defendant emphasizes the following language from an unpublished Ohio appellate court decision:

> The purpose of the statute is to protect from sexual abuse those who come under the care and custody of the State.  The statute is directed at those situations where the offender, through power conferred by the State, is able to coerce or force sexual activity by the misuse of that authority.  The statute makes criminal the situation where an inmate is faced with a request for sexual favors by a person with authority, for the reason that such authority restricts and limits the ability of the victim to make a free choice.

State v. Chipps, No. 14-82-1, 1983 WL 7261, at *1 (Ohio App. May 17, 1983) (emphasis added).  To the extent that Defendant suggests that the authority he exercised over inmates Ocasio and Pena-Ruiz was not conferred by the state because he was a contract employee, the Court agrees with the Government that section 2243(b) makes no distinction based on the nature of the accused's employment relationship with the prison.
     It also bears recognition that Chipps itself involved charges of improper sexual contact brought not against a

13

uttered by Congressman Coble illuminates little, and the Court declines to follow Defendant down a rabbit hole of speculation when the statutory language itself offers substantially greater clarity than the Act's limited legislative history.  See Air Courier Conference of America, 959 F.2d at 1218.

Defendant further argues that in using the term "custodial authority" in section 2243(b), Congress intended to incorporate into the statute the concept of custody developed under the jurisprudence of custodial interrogation in Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny.  According to Defendant, because courts applying Miranda in the prison context have recognized that a prisoner is not "in custody" for Miranda purposes unless there is a "greater restraint on his freedom than

---

correctional officer, but against "a staff psychologist" working at a prison.  Id.  While the court in Chipps ultimately affirmed the trial court's judgment of dismissal based on speedy trial grounds, it rejected the psychologist's argument that the statute, as applied to him, was void for vagueness.  Id. at *1, *3.  Defendant has identified no distinction between the "custodial, supervisory, or disciplinary authority" of a staff psychologist and that of an x-ray technician, and the Court thus finds nothing in Chipps to support Defendant's position.  The point of this discussion is not, of course, that Congress had an Ohio appellate court's unpublished discussion of the applicability of this law to a prison psychologist in mind when enacting 18 U.S.C. § 2243(b).  Rather, the point is that neither the Court nor Defendant is in a position to determine from Congressman Coble's nonspecific statement whether Congress had Chipps, another state court opinion, or no opinion whatsoever in mind when it enacted section 2243.  This is, in other words, an instance in which the plain language of the statute is significantly less ambiguous than the scanty legislative history invoked by Defendant.

usual," Alston v. Redman, 34 F.3d 1237, 1245 n.6 (3d Cir. 1994) (citation omitted), and unless he is interrogated by clearly identified law enforcement officers, see United States v. Grimes, 142 F.3d 1342, 1349 (11th Cir. 1998), Defendant's authority over inmates Ocasio and Pena-Ruiz was not "custodial" within the meaning of section 2243(b). This argument is singularly unpersuasive. There is no indication whatsoever that Congress, simply by using the term "custodial authority" in section 2243(b), intended to incorporate Miranda into a statute that has nothing to do with interrogation or self-incrimination. Indeed, in view of the fact that the concept of custodial interrogation of prisoners "simply does not lend itself easily to analysis under the traditional formulations of the Miranda rule," United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985), Defendant's suggestion that Congress would deliberately seek to incorporate such a poor conceptual fit is especially unpersuasive. In the complete absence of any indication that Congress intended to link section 2243(b) with Miranda, the Court cannot agree with Defendant that the Act applies only under circumstances in which there is a "greater restraint on [the inmate's] freedom than usual." Alston, 34 F.3d at 1245 n.6 (citation omitted).

Finally, the Court disagrees with Defendant's suggestion that section 2243(b) applies only to "law enforcement and corrections officers," (Def.'s Br. at 16), and not to medical

personnel like Defendant.  It is a basic principle of statutory interpretation that "[i]f Congress had intended to limit [the scope of a general statutory term to a more specific subset], one would have expected it to have done so expressly."  <u>Olympic Pipe Line Co. v. City of Seattle</u>, 437 F.3d 872, 880 (9th Cir. 2006) (citation omitted).  Perhaps in recognition of the fact that the "power arrangements [that] exist in a prison environment" are not limited to those between inmates and corrections officers, <u>Powell v. Carlson</u>, No. 05-70435, 2008 WL 474132, at *10 (E.D. Mich. Feb. 15, 2008) (quoting <u>Pelfrey v. Chambers</u>, 43 F.3d 1034, 1035 (6th Cir. 1995) (internal quotations omitted), Congress chose not to limit the scope of section 2243(b) to law enforcement and corrections officers, but instead extended the statute's reach to persons with a broader spectrum of "custodial, supervisory, or disciplinary authority" over inmates.  § 2243(b).  With the statutory language contradicting Defendant's argument, the Court cannot agree with Defendant that section 2243(b) applies only to law enforcement and corrections officers.  Under the facts of this case, section 2243(b) applies equally to prison medical providers.

In summary, the Court is not persuaded by Defendant's arguments that section 2243(b) proscribes a narrower range of conduct than its terms plainly indicate.  The Court finds that the Magistrate Judge did not err in finding beyond a reasonable

doubt that Defendant engaged in sexual activity with inmates over whom he had supervisory and custodial authority in violation of 18 U.S.C. § 2243(b), and will accordingly affirm the judgment of conviction.[6]

**IV. CONCLUSION**

    For the reasons discussed above, the Court will affirm the Magistrate Judge's judgment of conviction. The accompanying Order will be entered.

**December 30, 2008**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                               United States District Judge

---

[6] The Court, having addressed all substantive matters pertaining to the instant appeal, will dismiss as moot Defendant's motion for a telephonic status conference [Docket Item 20].